**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROBERT BERG, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| | ) Case No.  1:17-cv-11583 |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| XCERRA CORPORATION, ROGER W. BLETHEN, DAVID G. TACELLI, MARK S. AIN, ROGER J. MAGGS, JORGE TITINGER, BRUCE R. WRIGHT,  HUBEI XINYAN EQUITY INVESTMENT PARTNERSHIP (LIMITED PARTNERSHIP), UNIC CAPITAL MANAGEMENT CO., LTD., CHINA INTEGRATED CIRCUIT INDUSTRY INVESTMENT FUND CO., LTD., and  UNIC ACQUISITION CORPORATION, | ) CLASS ACTION ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action stems from a proposed transaction announced on April 10, 2017 (the "Proposed Transaction"), pursuant to which Xcerra Corporation ("Xcerra" or the "Company") will be acquired by affiliates of Sino IC Capital Co. Ltd.

2.     On April 7, 2017, Xcerra's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Unic Capital Management Co., Ltd. ("Unic"), China Integrated Circuit Industry Investment Fund Co., Ltd. ("Sponsor"), and Unic Acquisition Corporation ("Merger Sub").  On

August 4, 2017, Xcerra, Unic, and Hubei Xinyan Equity Investment Partnership (Limited Partnership) ("Parent," and together with Unic, Sponsor, and Merger Sub, "Sino") entered into an Assignment and Assumption Agreement, pursuant to which Unic assigned all of its rights and obligations under the Merger Agreement to Parent.  Under the terms of the Merger Agreement, as amended, Parent, through Merger Sub, will acquire all of the outstanding shares of Xcerra for $10.25 per share in cash.

3.      On August 7, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Xcerra common stock.

9.      Defendant Xcerra is a Massachusetts corporation and maintains its principal executive offices at 825 University Avenue, Norwood, Massachusetts 02062.  Xcerra's common stock is traded on the Nasdaq GS under the ticker symbol "XCRA."

10.     Defendant Roger W. Blethen ("Blethen") has been a director of the Company since 1980 and has served as Chairman of the Board since December 2008.  According to the Company's website, Blethen is a member of the Nominating and Governance Committee.

11.     Defendant David G. Tacelli ("Tacelli") is a director, President, and Chief Executive Officer ("CEO") of Xcerra.

12.     Defendant Mark S. Ain ("Ain") is a director of Xcerra and has served as Lead Independent Director since June 2010.  According to the Company's website, Ain is Chair of the Nominating and Governance Committee and Chair of the Compensation Committee.

13.     Defendant Roger J. Maggs ("Maggs") is a director of Xcerra.  According to the Company's website, Maggs is a member of the Audit Committee and the Nominating and Governance Committee.

14.     Defendant Jorge Titinger ("Titinger") is a director of Xcerra.  According to the Company's website, Titinger is a member of the Audit Committee, Nominating and Governance Committee, and Compensation Committee.

15.     Defendant Bruce R. Wright ("Wright") is a director of Xcerra.  According to the Company's website, Wright is Chair of the Audit Committee and a member of the Nominating and Governance Committee.

16.     The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

17.     Defendant Parent is a Chinese limited partnership, and a party to the Assignment and Assumption Agreement.  Unic is the controlling shareholder of the general partner of Parent. Sponsor is the largest limited partner of Parent.

18.     Defendant Unic is a Chinese limited liability company, an affiliate of Sino IC Capital Co. Ltd., and a party to the Merger Agreement.

19.     Defendant Sponsor is a related party of Unic and is managed by Sino IC Capital Co. Ltd.

20.     Defendant Merger Sub is a Massachusetts corporation, a controlled subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Xcerra (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22.     This action is properly maintainable as a class action.

23.     The Class is so numerous that joinder of all members is impracticable.  As of July 10, 2017, there were approximately 54,267,275 shares of Company common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and the Proposed Transaction

28.     Xcerra is a global provider of test and handling capital equipment, interface products, test fixtures and related services to the semiconductor and electronics manufacturing industries. The Company designs, manufactures and markets products and services that address the broad, divergent requirements of the mobility, industrial, medical, automotive and consumer end markets, offering a comprehensive portfolio of solutions and technologies and a global network of strategically deployed applications and support resources.

29.     The Company operates in the semiconductor and electronics manufacturing test markets through its atg-Luther & Maelzer, Everett Charles Technologies, LTX-Credence and

Multitest businesses.

30.     Xcerra has a broad spectrum of semiconductor and printed circuit board test expertise that drives innovative new products and services and its ability to deliver fully integrated semiconductor test solutions.

31.     On December 1, 2016, Xcerra issued a press release wherein it reported its financial results for its first fiscal quarter ended October 31, 2016.   The Company reported that semiconductor test solutions sales were up 13% year-over-year, and the Company had a record quarter for Diamondx sales.   Additionally, Xcerra reported two new customer wins for the MT2168 XT pick and place handler.  With respect to the financial results, Individual Defendant Tacelli, President and CEO of the Company, commented, "We are encouraged that our outlook for fiscal Q2 is stronger than a year ago and reflects a recovery in the RF PA space, additional FPD driver IC tester shipments, stronger handler sales and improvement in our EMS business segment."

32.     On February 21, 2017, Xcerra issued a press release wherein it reported its second fiscal quarter ended January 31, 2017.  The Company reported that total sales were up 11% year-over-year, and semiconductor test solutions were up 16%.  With respect to the financial results, Individual Defendant Tacelli commented:

> We had a solid Q2, with revenue at the higher end of our guidance but more importantly earnings above our business model. Early in January we started to see positive business trends developing and those have accelerated into our third fiscal quarter. This includes strength in both our Semi Test Solutions (STS), as well as our Electronics Manufacturing Solutions (EMS) business segments. Demand for our STS products is especially high as we plan to ship a record number of Diamondx systems during the quarter. This is partly due to the share gains from the strong adoption by multiple customers of our flat panel display driver test solution. We are also experiencing increasing demand for our tri temp MT2168 XT P&P handler from a variety of new customers. While visibility is typically limited to one quarter, we have a high degree of confidence the positive business trends we are currently seeing will continue beyond our third fiscal quarter.

33.     Nevertheless, the Board caused the Company to enter into the Merger Agreement,

pursuant to which Xcerra will be acquired by Sino.

34.     Despite a limited "go-shop period," the Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals.  The no solicitation provision, moreover, prevents the Board from granting "any waiver or release under any standstill or similar agreement with respect to any equity securities of the Company or any of its Subsidiaries or their respective assets or properties." Section 5.2(a) of the Merger Agreement states:

> (a) Subject to Section 5.2(c) and except as expressly permitted by this Section 5.2, at all times during the period commencing from 12:01 a.m. (New York City time) on the 1st day after the last day of the Go-Shop Period (the "No-Shop Period Start Date") and continuing until the earlier to occur of (x) the termination of this Agreement pursuant to Article VIII and (y) the Effective Time, the Company and its Subsidiaries shall not, and shall not authorize or instruct its respective directors, officers, employees, controlled affiliates, investment bankers, financial advisors, attorneys, accountants or other agents or representatives retained by any of them (collectively, "Representatives") to, directly or indirectly, (i) solicit, initiate or induce the making, submission or announcement of, or knowingly encourage, facilitate or assist with respect to the preparation, submission or announcement of, an Acquisition Proposal or any inquiry, proposal or offer that would reasonably be expected to lead to any Acquisition Proposal; (ii) furnish to any Person (other than Parent, Merger Sub or any designees or Representatives of Parent or Merger Sub) any non-public information relating to the Company or any of its Subsidiaries, or afford to any Person (other than Parent, Merger Sub or any designees or Representatives of Parent or Merger Sub) access to the business, properties, assets, books, records or other non-public information, or to any personnel, of the Company or any of its Subsidiaries, in any such case with respect to, or with the intent to induce, encourage, facilitate or assist in the making, submission or announcement of, an Acquisition Proposal or any inquiries, proposal or offer that would reasonably be expected to lead to any Acquisition Proposal; (iii) enter into, continue or otherwise participate or engage in discussions, communications or negotiations with any Person (other than Parent, Merger Sub or any designees or Representatives of Parent or Merger Sub) with respect to, or with the intent to induce, encourage, facilitate or assist in the making, submission or announcement of, an Acquisition Proposal or any inquiries, proposal or offer that would reasonably be expected to lead to any Acquisition Proposal; (iv) agree to, approve, endorse, recommend or consummate any Acquisition Proposal or enter into any letter of intent, memorandum of understanding, agreement in principle or similar

document, or any Contract (other than an Acceptable Confidentiality Agreement entered into in compliance with this Section 5.2) contemplating or otherwise relating to an Acquisition Proposal or Acquisition Transaction; or (v) grant any waiver or release under any standstill or similar agreement with respect to any equity securities of the Company or any of its Subsidiaries or their respective assets or properties; (vi) resolve or agree to do any of the foregoing.

35.    Further, the Company must promptly advise Sino of any proposals or inquiries received from other parties.  The Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Sino a "matching right" with respect to any "Superior Proposal" made to the Company.

36.    Further locking up control of the Company in favor of Sino, the Merger Agreement provides for a "termination fee" of up to $22.8 million, payable by the Company to Sino if the Individual Defendants cause the Company to terminate the Merger Agreement.

37.    By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

38.    Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

39.    The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

40.    First, the Proxy Statement omits material information regarding Xcerra's financial projections and the analyses performed by the Company's financial advisor, Cowen and Company, LLC ("Cowen").  When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

41.     With respect to Cowen's Discounted Free Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the discount rate range of 14.0% to 16.0%; (ii) the Company's estimated net operating loss carry forwards used by Cowen in its analysis; and (iii) the perpetuity growth rates implied from the analysis.

42.     With respect to Cowen's Analysis of Selected Publicly Traded Companies, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by Cowen in the analysis.

43.     With respect to Cowen's Analysis of Selected Transactions, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Cowen in the analysis.

44.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following section of the Proxy Statement: (i) "Management Projections;" and (ii) "Opinion of Cowen and Company, LLC."

45.     Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers.

46.     The Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Xcerra's officers and directors, including who participated in all such communications.

47.     Although the Proxy Statement indicates that, "[a]s of the date of this proxy statement none of our executive officers has entered into any agreement with Parent or any of its affiliates regarding employment with, or the right to purchase or participate in the equity of, the Surviving Corporation or one or more of its affiliates," it also vaguely indicates that there were several discussions between the parties regarding "employee retention matters."  In addition, in the press release announcing the Proposed Transaction, the President of Sino IC Capital Co. Ltd., Jun Lu, stated that: "We value the entire Xcerra team and are committed to keeping the company's headquarters in Norwood, Massachusetts."  As such, it is likely that the Company's management team will be retained by Sino following the completion of the Proposed Transaction.

48.     The Proxy Statement fails to disclose the timing and nature of all communications regarding the future employment and of Xcerra's officers, including who participated in all such communications.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

49.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Interests of the Company's Directors and Executive Officers in the Merger."

50.     Third, the Proxy Statement omits material information regarding the background of the Proposed Transaction.  The Company's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

51.     In particular, the Proxy Statement indicates that the Company entered into nondisclosure and confidentiality agreements with several interested parties, but the Proxy Statement fails to disclose whether any of those nondisclosure agreements contained standstill and/or "don't ask, don't waive" provisions that prevented, or are preventing, those counterparties from submitting topping bids to acquire the Company or requesting a waiver of standstill provisions.

52.     Notably, it is likely that such provisions do exist, because Section 5.2(a) of the Merger Agreement prohibits the Board from granting "any waiver or release under any standstill or similar agreement with respect to any equity securities of the Company or any of its Subsidiaries or their respective assets or properties."  This information is material, because without it, the Company's stockholders could be misled into believing that the interested parties are currently free to make a superior offer to acquire the Company.

53.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the "Background of the Merger" section of the Proxy Statement.

54.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Xcerra's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Xcerra

55.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Xcerra is liable as the issuer of

these statements.

57.    The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

58.    The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

59.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

60.    The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

61.    By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

62.    Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Sino

63.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.    The Individual Defendants and Sino acted as controlling persons of Xcerra within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Xcerra and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

65.     Each of the Individual Defendants and Sino was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

66.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Proxy Statement.

67.     Sino also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

68.     By virtue of the foregoing, the Individual Defendants and Sino violated Section 20(a) of the 1934 Act.

69.     As set forth above, the Individual Defendants and Sino had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a

direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.       Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.       In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.       Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.       Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.       Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.       Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  August 23, 2017

MATORIN LAW OFFICE, LLC

By:  */s/ Mitchell J. Matorin*
Mitchell J. Matorin (BBO# 649304)

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone: (302) 295-5310
Facsimile: (302) 654-7530

18 Grove Street, Suite 5
Wellesley, MA 02482
(781) 453-0100
mmatorin@matorinlaw.com

*Attorneys for Plaintiff*